# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| VALORIE LABEAU, | Case No. 18-CV-651 (NEB/LIB) |
| Plaintiff, | |
| v. | ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT |
| DEPUTY ZACH SORENSON and STEARNS COUNTY, | |
| Defendants. | |

Valorie LaBeau, a dog breeder, brought this Section 1983 suit against Stearns County and its Deputy Sheriff Zach Sorenson stemming from the County's seizure of her golden retrievers in 2015. The Complaint alleges violations of LaBeau's Fourth, Fifth, and Fourteenth Amendment rights, a conspiracy to violate those rights and her First Amendment right, a *Monell* claim, and various state law tort claims. Sorenson and the County jointly moved for summary judgment, arguing that all of LaBeau's claims are barred by some form of immunity. [ECF Nos. 27, 29.] This Court finds that the defendants are entitled to summary judgment because qualified immunity bars the Section 1983 claims against Deputy Sorenson, none of the Section 1983 claims against the County asserts a constitutional violation, and official immunity bars the state tort claims. Because the Court grants the motion for summary judgment, other pending motions—a *Daubert*

Motion to Exclude Plaintiff's Experts [ECF No. 22] and a Motion to Strike Plaintiff's Expert Declarations [ECF No. 47]—are denied as moot.

## BACKGROUND[1]

The basis of LaBeau's claims is that in November 2015, Deputy Sorenson led the County's efforts to seize twenty-three of her dogs because the County believed them to be in danger. On November 5, 2015, LaBeau's husband, David Hilliard, struck LaBeau and was arrested for domestic violence. [ECF No. 32-1 ("LaBeau Dep.") at 35:15–36:2, 37:12–22.] While in custody, Hilliard told officers that the dogs on the property were not being cared for properly. [ECF No. 32-2 "Hilliard Dep.", 19:1–21.] (He has since recanted the statement.) (*Id.* at 19:14–16.) After Hilliard's arrest, officers took Hilliard back to the property to collect his things. While there, the officers, including Sorenson, asked LaBeau if they could look around the property to see the dogs. (LaBeau Dep. at 40:7–41:10.) LaBeau refused. (*Id.* at 41:9–10.)

---

[1] LaBeau, in her opposition brief, makes factual assertions without citing to the record. [*See generally* ECF No. 40.] Rule 56 of the Federal Rules of Civil Procedure makes clear that a party making such assertions "*must* support the assertion[s] . . . by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c) (emphasis added). "A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 915 (8th Cir. 2007) (quoting *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990)). Nevertheless, the Court reviewed the entire record and from it draws the undisputed facts set forth in this opinion.

2

The officers returned the next day with a search warrant, accompanied by Dr. Gene Boysen, who is a veterinarian contracted by the county. [ECF No. 31 ¶ 5.] After reviewing the property and the condition of the dogs, Dr. Boysen determined there was no imminent danger to the dogs, but he was nonetheless concerned about them due to some of the conditions he observed on the property. (*Id.*) LaBeau does not challenge this search. (LaBeau Dep. at 46:15–17.)

The officers notified Lynden Township about the search and their findings. [ECF No. 32-4.] Based on the officers' findings, the township determined that LaBeau was violating her conditional use permit ("CUP"), a special zoning variance, and revoked the CUP on February 29, 2016. (*Id.*)

After this first search and the revocation of the CUP, the Sheriff's Department continued to investigate the issue of possible animal abuse on LaBeau's property. In March 2016, it requested and received reports from one of LaBeau's veterinarians about two puppies that died. [ECF No. 30-1; LaBeau Dep. at 55:11–21.] Employees of the veterinary clinic also told the officers they thought LaBeau's last litter of puppies was too skinny. [ECF No. 30-1.]

Based on the conditions observed during the execution of the November 2015 warrant and the veterinarian's report the following March, Deputy Sorenson applied and

3

received a new search warrant on March 9, 2016. [ECF No. 31 ¶¶ 10–11.][2] He also filed for and received a separate search warrant to gather and test soil and feces samples from the property for parasites. [*Id.* ¶ 12.] Deputy Sorenson and Dr. Boysen executed this soil and feces warrant on March 11, 2016. (LaBeau Dep. at 56:20–57:4.) At that time, Deputy Sorenson asked LaBeau to fill up the water bowls in one of the pens holding over a dozen puppies; she did so, and he observed them swarming and drinking the water. (*Id.* at 89:6–90:20, 106:21–107:12.) Dr. Boysen was also present, and both he and Deputy Sorenson believed the puppies' actions were due to dehydration. [ECF No. 30-2 at 4–5.] At that point, Deputy Sorenson asked Dr. Boysen if the puppies should be seized. (*Id.* at 59:23–60:15.) Dr. Boysen stated that he did not believe seizure was justified. (*Id.*)

That same day, after leaving the property, Dr. Boysen called the Minnesota Board of Animal Health and was informed that LaBeau had not followed up with recommendations he had made to her about the conditions on the property. [ECF No. 31 ¶¶ 17, 21–22; ECF No 3-2 at 4–5.]. After hearing about LaBeau's failure to comply with his earlier recommendations, Dr. Boysen reconsidered, and determined that the dogs were in imminent danger and should be seized. [ECF No. 30-2 at 4–5.] Deputy Sorenson then filed another warrant for the seizure of the dogs, citing the lack of access to water. [ECF No. 30-2.]

---

[2] This search warrant, which was for inspection of the property, was never executed, because as set forth below, after a separate soil and feces search warrant and further consideration the dogs were seized.

4

The warrant for seizure of the dogs included all the above information, even Dr. Boysen's change of mind. (*Id.*) It also stated Dr. Boysen's conclusion that the animals were in imminent danger because they had no access to water, and that Dr. Boysen believed LaBeau was in violation of Minnesota Statute section 364.39 subdivision 2. (*Id.*) Based on this information, a state court judge approved the warrant, and all the dogs on LaBeau's property were seized on March 11, 2016. [ECF No. 31 ¶¶ 21–22, 24, 27–28.] The entity assisting with the seizure was the Central Minnesota Animal Control Center ("CMACC"), acting under the supervision of the Sheriff's Department. (*Id.* ¶ 28; *see* LaBeau Dep. at 97:19–23.) CMACC is a private impound run by Lisa Tenter. [ECF No. 32-3 at 12:24–13:17; LaBeau Dep. at 121:19–25.]

At some point before March 16, 2016, LaBeau's lawyer wrote to the state court judge requesting a hearing on the seizure. The court denied the hearing. [ECF No. 43-2; ECF No. 43 ¶¶ 10–11.] The dogs were held at CMACC and returned to LaBeau on April 1, 2016, under an agreement that neither party admitted liability. [ECF No. 32-3 at 93:1–4; ECF No. 30-6.] One of the dogs died before release, and one died a day after. (LaBeau Dep. at 119:2–12, 129:17–22.)

On May 5, 2016, LaBeau was charged in state court with public nuisance, unlicensed breeder advertising animals for sale, and operating a commercial breeder without a license. [ECF No. 32-5.] LaBeau pled guilty to the first two counts, petty misdemeanors, in March 2017. (*Id.*)

## ANALYSIS

I.  **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences supported by the evidence. *B.M. ex rel. Miller v. S. Callaway Sch. Dist.*, 732 F.3d 882, 886 (8th Cir. 2013). However, the nonmoving party "may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trustees*, 553 F.3d 1110, 1113 (8th Cir. 2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

II.  **Qualified Immunity for Deputy Sorenson**

The defendants assert that Deputy Sorenson is entitled to qualified immunity for all the Section 1983 claims made against him. Qualified immunity shields governmental officials from liability for civil damages when their "conduct does not violate clearly

6

established statutory or constitutional rights of which a reasonable person would have known." *Blazek v. City of Iowa City*, 761 F.3d 920, 922 (8th Cir. 2014) (citation omitted). It only protects persons sued in their individual capacities. *Zar v. S.D. Bd. of Exam'rs of Psychologists*, 976 F.2d 459, 464 (8th Cir. 1992). "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Barton v. Taber*, 908 F.3d 1119, 1123 (8th Cir. 2018) (quotation marks and citations omitted). The Court determines that LaBeau has not demonstrated a deprivation of her constitutional rights.

### A. Fourth Amendment

LaBeau alleges that Deputy Sorenson included false statements in the warrant used to seize her dogs. The Court finds no genuine dispute over any material fact and concludes summary judgment is appropriate for this claim.

"A warrant based upon an affidavit containing 'deliberate falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment. An official who causes such a deprivation is subject to § 1983 liability." *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). LaBeau asserts that the false statements Deputy Sorenson included in the affidavit are that the puppies did not have continuous access to water, and they were required to have continuous access. The

7

contested language of the affidavit is as follows: "Dr. Boysen concluded his reasoning for seizure was the animals were not being provided adequate water and it was a violation of Minnesota State Statute [§] 346.39.2, which requires dogs and cats be provided with clean, potable water in sufficient quantity to satisfy the animals [sic] needs or supplied by free choice." [ECF No. 30-2.] LaBeau argues that the proper legal standard for access to water for breeders requires "[c]lean potable water must be made available to all dogs and cats at least twice daily for periods of not less than one hour." Minn. R. 1721.0520 subpart 7(B). LaBeau's argument is that Deputy Sorenson intentionally included the wrong legal standard in his search warrant affidavit, citing to the statute rather than the administrative rule.

The Court disagrees with LaBeau's conclusion that Deputy Sorenson included the wrong legal standard. Minnesota courts routinely hold that section 346.39 applies both to pet owners and breeders, including commercial breeders. *See, e.g.*, *In re Rowell*, No. 17-CV-1334, 2018 WL 2090552, at *2 (Minn. Ct. App. May 7, 2018); *In re McDuffee*, No. 07-CV-1053, 2008 WL 2492323, at *4 (Minn. Ct. App. Sept. 23, 2008). In contrast, the administrative rule cited by LaBeau applies only to individuals "licensed by the board to operate as a kennel or kennel dealer." Minn. R. 1721.0520 subpart 1. LaBeau is not and has never been licensed. (LaBeau Dep. at 51:20–52:2.) The rule she maintains controls does not apply to her. Deputy Sorenson's assertion of the correct legal standard is not a falsehood; therefore, it cannot be a deliberate falsehood. *See United States v. Adams*, 110

F.3d 31, 33 (8th Cir. 1997) (finding no constitutional violation when search warrant affidavit contained no falsehoods). The affidavit submitted by Deputy Sorenson including the statute cite was reasonable and did not violate LaBeau's Fourth Amendment rights. LaBeau does not assert any other basis for her claim of a Fourth Amendment violation. Thus, LaBeau cannot make out a constitutional violation based on the ensuing search warrant, and Deputy Sorenson is entitled to qualified immunity. The Court grants summary judgment on this claim.

### B. Conspiracy

LaBeau also alleges a conspiracy to violate her constitutional rights under Section 1983. To prove this claim, the plaintiff must show: "that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). The plaintiff must also show a deprivation of a constitutional right or privilege. *Id.* "A commonly held belief that a crime has been committed is not a conspiracy." *Myers v. Morris*, 810 F.2d 1437, 1454 (8th Cir. 1987*) abrogated on other grounds by Burns v. Reed*, 500 U.S. 478 (1991). Further, "[v]arious people engaged in investigating and reporting suspected criminal activity does not amount to conspiracy." *Id.* While it is somewhat difficult to discern, the Court understands LaBeau's conspiracy argument to be that Deputy Sorenson conspired with Lisa Tenter and CMACC (the organization that housed

9

her dogs after the seizure) to seize the dogs so that CMACC could sell them. (LaBeau Dep. 96:25–98:13, 121:19–122:3.) While the claim fails for multiple reasons,[3] it is again based on Deputy Sorenson's conduct in procuring the search warrant. Because the Court finds Deputy Sorenson acted reasonably in obtaining the search warrant, there is no constitutional violation, and LaBeau cannot succeed on this claim. *See Helmig v. Fowler*, No. 11-CV-04364 (NKL), 2014 WL 4659381, at *8 (W.D. Mo. Sept. 17, 2014) (holding that if a party cannot establish the deprivation of a constitutional right, his or her conspiracy claim necessarily fails).

### III.     42 U.S.C. § 1983 Claims against Stearns County

Defendants also assert that Stearns County is entitled to summary judgment for all the constitutional violations LaBeau claims it committed. Although municipal entities are not entitled to qualified immunity, *see Owen v. City of Independence*, 445 U.S. 622, 650 (1980), LaBeau must still make out a constitutional violation to assert a Section 1983 claim. Because the Court finds that LaBeau has not asserted any conduct amounting to a constitutional violation, summary judgment is appropriate.

#### *A. Fourth Amendment*

LaBeau argues that because her three criminal charges were based on the allegedly defective search warrant, there was no probable cause for them. Thus, she contends, the

---

[3] There no evidence in the record supporting this alleged conspiracy, including no evidence that CMACC intended to sell the dogs.

10

County's prosecution of these charges was malicious in violation of her Fourth Amendment right.[4] The Eighth Circuit has expressed uncertainty on whether a plaintiff can sue for malicious prosecution under Section 1983. *See Harrington v. City of Council Bluffs*, 678 F.3d 676, 679–80 (8th Cir. 2012). Nevertheless, it is black-letter law that the existence of probable cause defeats a Section 1983 claim based on malicious prosecution. *Id.* Beyond the allegedly defective search warrant, LaBeau points to no other lack of probable cause.[5] As the Court addressed above, the search warrant was reasonable and not constitutionally defective. Moreover, all information before the Court indicates that it was supported by probable cause. Because prosecution based on a valid search warrant is not a constitutional violation, LaBeau's claim on this ground must be dismissed.

### B. *Fifth and Fourteenth Amendments*

LaBeau's Fifth and Fourteenth Amendment claims allege a procedural due process violation in refusing to hold a hearing after the seizure of her dogs. "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any persons of property

---

[4] To the extent LaBeau's complaint could be read to assert a claim against Deputy Sorenson for malicious prosecution, it would be barred by qualified immunity because the prosecution was supported by probable cause. *See Harrington*, 678 F.3d at 679–80.

[5] LaBeau asserts, in the alternative and without support, that her charges are unrelated to the search warrants. But she does not explain why the prosecution lacked probable cause. In any event, LaBeau was convicted based on a guilty plea in which she agreed that she met the requirements of the crime charged. As such, the prosecution was supported by probable cause. *See* Minn. R. Crim. P. 23.03 subd. 3.

11

without due process of law." *Dusenberry v. United States*, 534 U.S. 161, 167 (2002) (internal quotation marks omitted). The Fifth Amendment only applies to actions taken by the federal government. *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010). Because LaBeau has not named any federal government actors in her suit, the Court grants summary judgment on any Fifth Amendment violations LaBeau asserts against the County.

As to the Fourteenth Amendment claims, under its Due Process Clause, individuals whose property interests are at stake due to the actions of state governmental actions are entitled to certain procedural safeguards. *See Walters v. Wolf*, 660 F.3d 307, 311 (8th Cir. 2011). "Once it is determined that due process applies, the question remains what process is due." *Bus. Commc'ns, Inc.*, 739 F.3d 374, 380 (8th Cir. 2011. "Required procedures may vary according to the interests at stake." *Id.*

Here, after the County seized LaBeau's dogs, she filed a request for a hearing. [*See* ECF No. 43-2.] A Minnesota state court judge canceled the hearing. LaBeau contends the cancelation amounts to insufficient process. [*See id.*] But the County cannot be held liable under Section 1983 for the actions of state actors. *See Justice Network, Inc.*, 931 F.3d 753, 765 (8th Cir. 2019). In Minnesota, state court judges are state actors, and a state court judge—not the County—was responsible for canceling the hearing. *See* Minn. Stat. § 2.722. Thus, the Court need not reach whether the process LaBeau received was sufficient,

the County is entitled to judgment as a matter of law, and the Fourteenth Amendment claims are dismissed.

### C. *Monell* Claim

LaBeau alleges that the County is liable for First and Fourth Amendment violations under Section 1983 because it failed to adequately train its police officers. "Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability." *Saunders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007) (citations omitted). Because LaBeau cannot establish that Deputy Sorenson violated her constitutional rights, her § 1983 claims against the County fail.

Even if the Court could find a genuine issue of material fact as to a violation of LaBeau's constitutional rights, summary judgment on these claims would nonetheless be appropriate. Municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). A municipality's failure to train its employees must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id*. at 61 (citation omitted). The deliberate indifference standard requires proof that "a municipal actor disregarded a known or obvious consequence of his action." *Id.* (citation omitted). A municipality may be considered deliberately indifferent where its policymakers have "actual or constructive notice that a particular omission in their training program cause[d] city employees to violate citizens' constitutional rights," and choose to retain that program. *Id.* "A pattern

of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quotation marks and citation omitted).

LaBeau contends that Stearns County should have trained its deputies on proper animal care and welfare. Even assuming the deputies were not so trained, and even assuming the inclusion of a contracted veterinarian in its decision-making was inadequate or constitutionally infirm, LaBeau proffers no evidence that the County had actual or constructive notice that its deputies were violating citizens' constitutional rights related to animals. (*See* LaBeau Dep. 192:19–195:2.) She offers no evidence of other similar seizures by county officers, but rather, relies on her own single occurrence. This is insufficient to show the County's deliberate indifference. *See Russell v. Hennepin Cty.*, 420 F.3d 841, 849 (8th Cir. 2005) (refusing to infer the existence of an unconstitutional government policy or custom from a single occurrence); *Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991) ("Generally, an isolated incident of police misconduct by subordinate officers is insufficient to establish municipal [liability]."). And so summary judgment on LaBeau's Section 1983 claims against Stearns County is proper.

## IV. Official Immunity

The defendants assert that Deputy Sorenson is entitled to common law official immunity for the state law claims of defamation, malicious prosecution, negligence, and conversion and that the County is entitled to vicarious official immunity. Official

14

immunity is intended "to protect public officials from the fear of personal liability that might deter independent action." *Dokman v. Cty. of Hennepin*, 637 N.W.2d 286, 296 (Minn. Ct. App. 2001) (citation omitted). "In general, official immunity turns on: (1) the conduct at issue; (2) whether the conduct is discretionary or ministerial . . . ; and (3) if discretionary, whether the conduct was willful or malicious." *Kariniemi v. City of Rockford*, 882 N.W.2d 593, 600 (Minn. 2016) (quotation marks and citation omitted). As discussed above, the Court finds that none of the conduct LaBeau complains of amounts to a constitutional violation.

Even so, official immunity only applies to discretionary conduct if it is not willful or malicious. *See Id.* Conduct is discretionary when it requires the exercise of individual judgment in carrying out the official's duties. *Fedke v. City of Chaska*, 685 N.W.2d 725, 729 (Minn. Ct. App. 2004). As a general matter, many of the duties of police officers "are of an 'executive character involving the exercise of discretion.'" *Elwood v. Rice Cty.*, 423 N.W.2d 671, 678 (Minn. 1988) (quoting *Cook v. Trovatten*, 200 Minn. 221, 224 (Minn. 1937)). Applying for and executing a search warrant is unquestionably a discretionary duty. *See, e.g.*, *Johnson v. Cty. of Dakota*, 510 N.W.2d 237, 240 (Minn. Ct. App. 1994). The court concludes that Deputy Sorenson's actions were discretionary and are entitled to official immunity unless they were willful and malicious.

The Court finds no genuine issue of material fact exists as to whether Deputy Sorenson's conduct was willful or malicious. The Minnesota Supreme Court has

15

determined that in the official immunity context, willful and malicious are synonyms. *Rico v. State*, 472 N.W.2d 100, 106–107 (Minn. 1991). Malice is defined as "the intentional doing of a wrongful act without legal justification or excuse, or . . . the willful violation of a known right." *Dokman*, 637 N.W.2d at 296 (citation omitted). The question of malice is an "objective inquiry into the legal reasonableness of an official's actions." *Id*. (citation omitted). As discussed above, Deputy Sorenson's actions had legal justification, namely probable cause, so he is entitled to official immunity. *See, e.g., Schumacher v. Halverson*, 467 F. Supp. 2d 939, 953 (D. Minn. 2006) The Court, therefore, grants summary judgment on all the state law claims.

The defendants also argue that Stearns County is entitled to vicarious official immunity. The Court agrees. "Official immunity also protects government entities from vicarious liability for actions that are entitled to immunity." *Hayek v. City of St. Paul*, 488 F.3d 1049, 1056 (8th Cir. 2007) (citing *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998)). Because Deputy Sorenson is entitled to official immunity for his actions, the County is entitled to vicarious official immunity for the same conduct.

**CONCLUSION**

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion for Summary Judgment [ECF No. 27] is GRANTED;

2. Defendants' *Daubert* Motion to Exclude Plaintiff's Experts Testimony [ECF No. 22] is DISMISSED AS MOOT; and

3. Defendants' Motion to Strike Expert Declaration [ECF No. 47] is DISMISSED AS MOOT.

4. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 27, 2019        BY THE COURT:

                                        s/Nancy E. Brasel
                                        Nancy E. Brasel
                                        United States District Judge